## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>Maxim Mouratov Mossman<br><br>       Debtor. | Case No. 23-31448-mvl7<br><br>Chapter 7 |
| Kapitus Servicing, Inc.<br><br>       Plaintiff,<br><br>    v.<br><br>Maxim Mouratov Mossman,<br><br>       Defendant. | Ad. Pro. No. 23-084-mvl |

## KAPITUS SERVICING, INC.'S
## AMENDED COMPLAINT TO DETERMINE
## NON-DISCHARGEABILITY OF DEBT

Kapitus Servicing, Inc., as servicing agent for Kapitus LLC ("Kapitus," the "Plaintiff" or the "Purchaser"), by and through its undersigned attorneys files this Amended Complaint under section 523 of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (as amended, the "Bankruptcy Code") objecting to the dischargeability of a pre-petition debt owed by Defendant Maxim Mouratov Mossman ("Mossman," the "Debtor" or the "Guarantor") to Kapitus and in support hereof alleges as follows:

### JURISDICTION AND VENUE

1.      This is a core proceeding under 28 U.S.C. §157(b)(2)(I) and is brought pursuant to section 523 of the Bankruptcy Code and rule 4007 of the Federal Rules of Bankruptcy Procedure.

2.      Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 157 and 1334.

3.      Venue over the instant action properly lies in this Court pursuant to 28 U.S.C. §1409(a) because this complaint arises in Debtor's chapter 7 bankruptcy case.

4.      If the Court should find that this is not a core proceeding, Plaintiff consents to entry of final judgment by the Court.[1]

5.      This Adversary Proceeding relates to *In re Maxim Mouratov Mossman*, Case No. 23-31448-mvl7 (Bankr. N.D. Texas) (Chapter 7), now pending in this Court (the "Bankruptcy Case").

## THE PARTIES

6.      Plaintiff Kapitus, is a Virginia Corporation, and at all relevant times maintained its offices formally located at 211 Bulifants Blvd., Suite E, Williamsburg, VA 23188 and currently located at 2500 Wilson Boulevard, Suite 350, Arlington, VA 22201 and 120 West 45th Street, New York NY 10036.

7.      Defendant Maxim Mouratov Mossman is a natural person and, upon information and belief, is a resident of the state of Texas with a mailing address of 2222 Medical District Dr Apt 3211, Dallas, TX 75235.

8.      Debtor owned six businesses engaged in the practice of dentistry: Maxim Mossman DDS, PLLC; MossPrime Dental, PLLC; Casa Mossman Dental, PLLC; RightChoice Dental,

---

[1]      Notwithstanding any of the allegations and claims herein, the institution of this Adversary Proceeding, the filing of this complaint and any other appearance in this Adversary Proceeding and in the above-referenced bankruptcy case (the "Bankruptcy Case"), including the submission of motions, opposition papers, and entry of orders, is without waiver, and express reservation, of any and all of Plaintiff's rights, defense and remedies available at law and in equity, including, without limitation, under the Agreements (as defined below), Uniform Commercial Code, any other applicable federal or state law and/or commercial code, and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* If and when Plaintiff shall file a proof of claim in the Bankruptcy Case (the "Proof of Claim"), Plaintiff expressly incorporates any reservation of rights that it shall incorporate in the Proof of Claim.

PLLC; Dental Boss of El Paso, PLLC; and Mossman Dental, PLLC.  Of these six businesses, two

of them, Maxim Mossman DDS, PLLC and MossPrime Dental, PLLC (each a "Merchant" or

"Seller" and together the "Merchants" or "Sellers") entered into Forward Purchase Agreements

with Kapitus LLC.  In connection with the Forward Purchase Agreement for MossPrime Dental,

PLLC, Casa Mossman Dental, PLLC pledged its assets as security.

9.     Maxim Mossman DDS, PLLC's principal place of business is located at 909 S.

Tyler St. Ste 100, Dallas, Texas 75208-6254.

10.    MossPrime Dental, PLLC's principal place of business is located at 1625 Pecan

Park Dr, Arlington, Texas 76012-3044.

11.    Casa Mossman Dental, PLLC's principal place of business is located at 670 West

Campbell Road, Suite 160, Richardson Texas 75080.

12.    Upon information and belief, at all times relevant hereto, the Debtor is and was the

sole owner of each Merchant, and the Debtor made all decisions and statements to Plaintiff relevant

to the issues herein.

13.    Plaintiff is a secured creditor of Maxim Mossman DDS, PLLC, MossPrime Dental,

PLLC, and Casa Mossman Dental, PLLC, and an unsecured creditor of Debtor with an aggregate

claim against the Debtor in the amount of $414,102.00 (along with additional costs, fees, expenses,

and interest), as of July 10, 2023, the Petition Date.

## GENERAL ALLEGATIONS

14.    On July 10, 2023 (the "Petition Date"), Debtor filed for bankruptcy under chapter

7 of the Bankruptcy Code [Doc. No. 1].

15.    Pursuant to Official Form 309A filed on July 7, 2023, the deadline to object to

discharge is October 10, 2023.  [Doc. No. 4].

16.    Accordingly, this Complaint is timely filed.

## SPECIFIC FACTUAL ALLEGATIONS

17.     Since 2021, Kapitus received various applications (and bank statements) for financing from the Debtor including an October 2021 submission for Maxim Mossman DDS showing the company grossed $2.4 million in sales and sought $250,000 for "Business Development" and a January 2022 submission for MossPrime Dental PLLC showing the company earned $500,000 in gross sales and sought $100,000 for "working capital."

18.     On March 7, 2023, Mossman, on behalf of Merchant Maxim Mossman DDS, PLLC, applied for financing with Kapitus through Peak Source (the "Application"). Peak Source is an independent broker that seeks funding on behalf of its clients, typically from numerous sources.   In the Application, Maxim Mossman DDS authorized Peak Source to act as its representative and provide its merchant information to other entities for funding.

19.     Mossman, individually and on behalf of Merchant Maxim Mossman DDS, represented and acknowledged in the Application that (1) all information and documents provided to Peak Source including credit card processor statements are true, accurate and complete, (2) Mossman and Maxim Mossman DDS will immediately notify Peak Source of any change in such information or financial condition, (3) Mossman and Maxim Mossman DDS authorize Peak Source to disclose all information and documents that Peak Source may obtain including credit reports to other persons or entities that may be involved with or acquire commercial loans having daily repayment features or purchases of future receivables including Merchant Cash Advance transactions (each an "Assignee"), and each Assignee is authorized to use such information and documents, and share such information and documents with other Assignees, in connection with potential transactions, (4) Peak Source and each Assignee will rely upon the accuracy and completeness of such information and documents, and also, that Mossman was authorized to sign the Application on behalf of Maxim Mossman DDS.

20.     The Application provides that the Debtor acknowledges and agreed that "all information and documents provided . . . are true, accurate and complete" and that any information change would be immediately disclosed.

21.     Debtor provided business and financial records in support of his Application.

22.     After receiving the Application, Kapitus provided Debtor a Forward Purchase Agreement (Fixed ACH Delivery), Security Agreement, and Guaranty, which outlined the purchase terms and included several representations that Debtor and Merchant were required to make.

23.     Kapitus requires, as a threshold step in its consideration of whether to purchase a potential merchant's future receivables, that each merchant sign the agreement and provide certain written representations about its financial situation, operational plans, and intentions. Because Kapitus' funding process is truncated from that of a standard financing institution, as is typical for the alternative financing industry, Kapitus relies heavily upon a merchant's representations and warranties made during the application process.

24.     On March 8, 2023, Mossman completed and submitted to Kapitus a document titled "Representations and Acknowledgements – Funding is Contingent Upon Your Completion and Review by Kapitus" (the "March 2023 Representations and Acknowledgments"), attached hereto as Exhibit A, in which Mossman made the following representations and acknowledgements to Kapitus, among others:

    a.   **I am an authorized representative of my business**, with the authority to bind my business to all obligations in the pending financing agreement with Kapitus and to execute any other documents that may be needed.

    b.   **I do NOT anticipate closing my business** for any reason over the next 12 months, including for, or due to: planned vacations, renovations, seasonality, medical procedures, slow business periods, eviction by landlord, failure to pay taxes, failure to maintain any business licenses, or failure to comply with any legal requirements, or any other reason.

    c.   **Neither my business nor I plan to file for bankruptcy** or commence any similar proceeding, nor do I have any reason to believe that creditors of my business may attempt to file an involuntary bankruptcy proceeding against my business or commence any similar proceeding, within the next 12 months.

    d.   **I am current and NOT in arrears with the payments due under my business's mortgage, or under my business's lease, as applicable.**

    e.   **Neither my business nor I are in arrears on any business or personal loans or** other financial obligations, except as previously disclosed to Kapitus in writing.

    f.   **NO taxing or other authorities have filed any liens nor do I have any unpaid tax obligations,** except as previously disclosed to Kapitus in writing.

    g.   **All information that I provided to Kapitus to obtain financing for my business accurately reflects the current ownership of the business, business status and/or financial condition of my business.**

    h.   **Neither my business nor I are party to any pending litigation** that I would expect to have a material impact on my business.

    i.   **I acknowledge that I submitted the statements herein with the intent to obtain financing, Kapitus is relying on such statements to determine whether to approve the financing and that any false statements or misrepresentations made to obtain funding constitute** fraud and will subject me and my business to legal action. ***If you cannot truthfully make these representations and acknowledgments, please contact your current sales representative to address any previously undisclosed issues.***

    j.   **I acknowledge any approval for financing is contingent upon, and subject to, Kapitus's review of my responses to these questions, and that Kapitus will not disburse any funds to me unless I can truthfully provide these representations and acknowledgements.**

March 2023 Representations and Acknowledgments (emphasis in original).

    25.    On the same day, March 8, 2023, Mossman in his capacity as owner and representative of Merchant Maxim Mossman DDS, PLLC, and in his individual capacity as guarantor, executed a Forward Purchase Agreement (Fixed ACH Delivery) (the "March 2023 Agreement") with Kapitus.  A true and correct copy of the March 2023 Agreement is attached hereto as Exhibit B.

26.     Pursuant to the March 2023 Agreement, Plaintiff purchased $290,000.00 of future receipts, accounts, contract rights and other obligations generated in the course of Merchant Maxim Mossman DDS, PLLC's business operations for the total gross purchase price of $200,000. Contemporaneously with the execution of the March 2023 Agreement, and as further security, the Debtor executed a personal guaranty (the "March 2023 Guaranty"), guaranteeing Merchant's full performance of all terms and obligations under the March 2023 Agreement.   A true and correct copy of the March 2023 Guaranty is attached as part of the March 2023 Agreement.

27.     In connection with the March 2023 Agreement, the Debtor represented, warranted, and covenanted the following:

**II.     REPRESENTATIONS,     WARRANTIES     AND COVENANTS.**  Merchant represents, warrants and covenants that as of this date and during the term of the Agreement:

**2.1 Financial Condition and Financial Information.** The information and financial statements which have been furnished to Purchaser by Seller and Guarantor, and such future statements which will be furnished hereafter at the request of Purchaser, fairly represent the ownership and operations of the Seller's business and the financial condition of Seller and Guarantor at such dates, and since those dates, there has been no material adverse change, financial or otherwise, in such condition, operation or ownership of Seller or Guarantor (as applicable). Seller and Guarantor are current on any and all lease, rent or mortgage payments due. Seller and Guarantor are currently in compliance with all loans, financing agreements, promissory notes, and/or other obligations of indebtedness, except as disclosed to Purchaser. No material changes, financial or otherwise, in the condition, operation or ownership of Seller and Guarantor (as applicable) are in any way expected or anticipated and Seller and Guarantor do not anticipate closing or selling Seller's business. Neither the Seller nor the Guarantor are party to any pending litigation that is expected to have a material impact on the Seller or Guarantor. Seller has a continuing, affirmative obligation to advise Purchaser of any material change in its financial condition, operation or ownership . . .

**2.3 Authorization.** Seller, and the person(s) signing the Transaction Documents on behalf of Seller, have full power and authority to

incur and perform the obligations under the Transaction Documents, all of which have been duly authorized. . . .

**2.9 No Bankruptcy or Insolvency.** Seller is solvent, no transfer of property is being made by Seller, and no obligation is being incurred by Seller in connection with the sale of Receipts with the intent to hinder, delay, or defraud either present or future creditors of Seller. Seller represents that it is not insolvent and does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code or any state-law analogue, and there has been no involuntary petition under such laws brought or pending against Seller. Seller further warrants that it does not anticipate filing any such receivership or bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

**2.10 Other Financing.** Seller shall not enter into any arrangement, agreement or commitment for any additional financing, whether in the form of a purchase and sale of receivables, the sale of accounts receivable, or a loan (whether secured or unsecured) with any party other than Purchaser without Purchaser's written consent. . . .

**2.11 Unencumbered Receipts.** Seller has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of Purchaser. . . .

**2.15. Sale or Dissolution of Seller.** Seller shall not: (a) sell, dispose, transfer or otherwise convey its business, assets and/or any equity interest in Seller; or (b) effectuate the suspension, dissolution, or termination or Seller's business without the express prior written consent of Purchaser, or the written agreement of any purchaser, assignee, or transferee assuming all of Seller's and Guarantor's obligations under the Transaction Documents pursuant to documentation satisfactory to Purchaser (as applicable).

**2.16 Accuracy of Information.** All information provided by Seller and Guarantor to Purchaser in the Transaction Documents, in any application, in all other Seller forms and in response to any request by Purchaser for information whether oral or in writing, is true, accurate and complete in all respects.

March 2023 Agreement, at pp. 3–4.  The Agreement also includes a "Use of Proceeds Certification

that provides:

1. The entirety of the Purchase Price will be used in the ordinary course of business.

2. The entirety of the Purchase Price will be used exclusively for a Business Purpose and no other. A Business Purpose as applied to use of proceeds obtained under this Purchase Agreement refers solely to the purchase and acquisition of specific products or services used for the following purposes only: (i) working capital, (ii) business insurance (but not self-insurance programs), (iii) franchise fees, (iv) employee training, (v) the purchase of equipment, (vi) inventory, (vii) business supplies and raw materials, and (viii) the construction, renovation or improvement of facilities (but not the purchase of real estate). Business Purpose does not include: (a) payment for, or purchase of, any items, goods, materials real property, personal property or services for personal, individual or household use; or (b) use of funds for any proceeding under the United States Bankruptcy Code or any similar law (whether arising under Federal or State law) and/or any other legal proceeding or alternative dispute resolution proceeding.

*Id*. at p. 8.

28.     In executing the Marcg 2023 Agreement, the Debtor agreed that all information provided in forms and recorded interviews was "true, accurate, and complete in all respects", and the Agreement further emphasized that "**If any information provided is false or misleading, Seller shall be held liable for fraud in the inducement and fraud and Guarantor(s) shall be personally liable for the Seller's obligations.**" *Id*. at p. 2 (emphasis in original).

29.     The Debtor provided financial information in connection with the Application. The Debtor provided a December 2022 UMB bank statement showing opening balance of $33,453.61 and ending balance of $91,338.69 with deposits of $238,082.12 and withdrawals of $180,165.04; a January 2023 UMB bank statement with opening balance of $91,338.69 and closing balance of $61,105.95 with deposits of $286,580.59 and withdrawals of $316,802.33; and a February 2023 UMB bank statement showing a beginning balance of $61,105.95 plus deposits of $237,824.49 and withdrawals of $238,316.95 and an ending balance of $60,596.49.  If Merchant's financial

condition changed the Debtor had an obligation to disclose the change pursuant to Section 2.1 of the March 2003 Agreement.

30.     On March 8, 2023, in reliance on the representations made by Debtor in the March 2023 Representations and Acknowledgments, the financial information provided into Kapitus, and the representations made in the March 2023 Agreement, Plaintiff funded the March 2023 Agreement.

31.     On May 9, 2023, Mossman, on behalf of Merchant MossPrime Dental, PLLC, applied for financing with Kapitus through Peak Source (the "2nd Application"). Mossman and MossPrime Dental made all the same representations in the 2nd Application as Mossman and Maxim Mossman DDS did in the Application referenced above.

32.     On May 9, 2023, Mossman completed and submitted to Kapitus a document titled "Representations and Acknowledgements – Funding is Contingent Upon Your Completion and Review by Kapitus" (the "May 2023 Representations and Acknowledgments" and together with the March 2023 Representations and Acknowledgments, the "Representations and Acknowledgments"), attached hereto as Exhibit C. In the May 2023 Representations and Acknowledgments, Mossman made all the same representations and acknowledgements to Kapitus as he made in the March 2023 Representations and Acknowledgments.

33.     On the same day, May 9, 2023, Mossman in his capacity as owner and representative of Merchant MossPrime Dental, PLLC, and in his individual capacity as guarantor, executed a Forward Purchase Agreement (Fixed ACH Delivery) (the "May 2023 Agreement," and together with the March 2023 Agreement, the "Agreements") with Kapitus. Further, in the May 2023 Agreement, Merchant MossPrime Dental, PLLC and Mossman granted Kapitus a security

interest in all assets and equity interests of Casa Mossman Dental PLLC.  A true and correct copy of the May 2023 Agreement is attached hereto as <u>Exhibit D</u>.

34.      Pursuant to the May 2023 Agreement, Plaintiff purchased $217,500.00 of future receipts, accounts, contract rights and other obligations generated in the course of Merchant MossPrime Dental, PLLC's business operations (and together with future receipts, accounts, contract rights and other obligations purchased on the March 2023 Agreement, the "<u>Receivables</u>") the for the total gross purchase price of $150,000.  Contemporaneously with the execution of the May 2023 Agreement, and as further security, the Debtor executed a personal guaranty (the "<u>May 2023 Guaranty</u>"), guaranteeing Merchant's full performance of all terms and obligations under the May 2023 Agreement.   A true and correct copy of the May 2023 Guaranty is attached as part of the May 2023 Agreement.

35.      In connection with the May 2023 Agreement, the Debtor made the same representations, warranties, and covenants as contained in the March 2023 Agreement.

36.      MossPrime Dental, PLLC had applied for funding twice in March 2023, but the contracts expired without the company going through with those fundings.  In connection with those requests for funding, bank statements were submitted to Kapitus.  Kapitus relied on all financial information in the file to offer the funding in the May 2023 Agreement.  This financial information included a December 2022 UMB bank statement with an opening balance of $9,092.96, deposits of $201,705.30, withdrawals of $182, 971.48 and closing balance $27,799.78; a January 2023 UMB bank statement with an opening balance of $27,799.78, deposits of $217,173.06, withdrawals of $206,444.70, and an ending balance $38,519.14; a February 2023 UMB bank statement with an opening balance of $38,519.14, deposits of $148,565.94, withdrawals of $146,526.00, and en ending balance $40,477.08; a March 2023 UMB bank

statement with an opening balance of $40,477.08, deposits of $142,574.33, withdrawals of $165,846.62, and an ending balance $17,157.79; April 2023 UMB Bank Statement opening balance $17,157.79, deposits $171,198.67, withdrawals $158,057.60, ending balance $30,211.86.

37.     In connection with the May 2023 Agreement, Debtor also pledged the assets of Casa Mossman Dental, PLLC.  This entity ultimately did not have any assets.  Kapitus later discovered that Casa Mossman Dental, PLLC sold substantially all of its assets at the end of 2022, before the Debtor pledged its assets in the May 2023 Agreement.

38.     On July 10, 2023, the Petition Date, the Debtor filed for bankruptcy.

39.     Each of Mossman's six businesses also filed for Chapter 7 bankruptcy in July 2023 (with bankruptcy case number following in parenthetical): Maxim Mossman DDS, PLLC (Case No. 23-31449); MossPrime Dental, PLLC (Case No. 23-31485); Casa Mossman Dental, PLLC (Case No. 23-31486); RightChoice Dental, PLLC (Case No. 23-31487); Dental Boss of El Paso, PLLC (Case No. 23-31490) and Mossman Dental, PLLC (Case No. 23-31489).

40.     Upon information and belief, at the time of making the Representations and Acknowledgments and entering into the Agreements, contrary to the representations made by the Debtor, the Debtor intended to file for bankruptcy for himself and his businesses, he intended to close his businesses in the next 12 months, he intended to obtain additional financing, the financial condition of the Merchants had materially changed from the financial information submitted on behalf of the Merchants, the Merchants were parties to undisclosed litigation with the Department of Justice over violations of the Stark Act and this litigation did have a material impact on the Merchants' business, the Debtor and Merchants were not current on all of their financial obligations, and the Debtor used the proceeds of the Agreements not solely for ordinary course business expenses, but for non-ordinary course business expenses including wind-down expenses.

41.     In the Representations and Acknowledgements, Mossman represented that he did not intend to file for bankruptcy for himself or his business in the next 12 months.  The May 2023 Representations and Acknowledgements was made on May 9, 2023.  Mossman transferred funds to his bankruptcy attorney on May 30, 2023, just 21 days after making the representation that he did not intend to file for bankruptcy for himself or his businesses.  By July 2023, Mossman and his six businesses filed for bankruptcy.

42.     In the Representations and Acknowledgements, Mossman represented that he did not intend to close any of his businesses in the next 12 months.  The May 2023 Representations and Acknowledgements was made on May 9, 2023.  By July 2023, just two months after making the representation, Mossman and his six businesses filed for chapter 7 liquidation bankruptcies, which closed down the businesses.  On information and belief, the Debtor knew at the time he made the representations that he intended to file bankruptcy and the bankruptcy would result in the businesses closing.

43.     In the Agreement, the Debtor represented that the Merchant would not enter into any arrangement, agreement or commitment for any additional financing, whether in the form of a purchase and sale of receivables, the sale of accounts receivable, or a loan (whether secured or unsecured) with any party other than Kapitus without Kapitus's written consent.  On information and belief, soon after the Debtor entered into the Agreements, he entered into another financing with Idea Financial.  Considering the proximity in the timing of these events, the Debtor likely misrepresented his intention to get other financing.

44.     In the Representations and Acknowledgements, the Debtor represented that all information that he provided to Kapitus to obtain financing for his businesses accurately reflected the current financial condition of the business.  Further, in the Agreements, the Debtor represented

that the financial condition of the Merchants had not materially changed from the financial information submitted on behalf of the Merchants.   On information and belief, these representations were false when made.   As one example, the October 2021 submission for Maxim Mossman DDS showed the company having $2.4 million in sales in 2021 and the 2021 tax return for Maxim Mossman DDS showed $1,547,928 in income; however, the Schedules filed for Maxim Mossman DDS reflect that it did not generate any revenues from 2021-2023.  Overall, the financial submissions made by the Debtor reflected that the Merchants were healthy businesses that generated substantial revenues with hundreds of thousands of dollars going through the business bank accounts, as reflected in the bank account statements provided to Kapitus, when just a few short months after applying for the financing with Kapitus the Debtor and the Merchants filed for bankruptcy.

45.     In the Representations and Acknowledgements, Mossman represented the Merchants were not party to any pending litigation that he would expect to have a material impact on the business.  However, on information and belief, the Debtor and the Merchants were parties to pending litigation with the Department of Justice over violations of the Stark Act, as referenced on Debtor's and on MossPrime's schedules reflecting a debt to the Department of Justice in the amount of $72,000 that was not previously disclosed to Kapitus. and this litigation did have a material impact on the Merchants' business.

46.     In the Representations and Acknowledgements, Mossman represented the Debtor and Merchants were not in arrears on any business or personal loans or other financial obligations. However, on information and belief, considering the number and amounts of the debts disclosed on the Debtor's and the Merchant's Schedules and considering the relative short period of time

between when this representation was made and the bankruptcy filing for the Debtor and the

Merchants, this statement was false when made.

47.     In the "Use of Proceeds Certification" that is part of the Agreements, the Debtor

represented that the proceeds from the Agreements would be used in the ordinary course.

However, on information and belief, the Debtor used the proceeds of the Agreements not solely

for ordinary course business expenses, but for non-ordinary course business expenses including

wind-down expenses.

<u>**COUNT I**</u>
**Non-dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2)(A)**

48.     Plaintiff realleges paragraphs 1 through 47 and incorporates the same as though set

forth herein.

49.     Debtor engaged in false pretenses, false statements and actual fraud to obtain

money from the Plaintiff including the following:

    a.  Debtor represented to Kapitus as late as May 9, 2023 that neither he nor his

       businesses intended to file for bankruptcy when, on information and belief, the

       Debtor was in the process of preparing to file for bankruptcy for both him and his

       businesses and by May 30, 2023 the Debtor had already transferred funds to a

       bankruptcy lawyer and by July 2023 the Debtor and his six businesses all filed

       for bankruptcy.[2]

    b.  Debtor represented to Kapitus that he did not intend to close his businesses down

       for any reason in the next 12 months when, on information and belief, the Debtor

---

[2]     If the statement regarding the intention to file for bankruptcy is a statement "respecting the debtor's or an
insider's financial condition" as such term is used in 11 U.S.C. § 523(a)(2), then as an alternative to this
claim under 11 U.S.C. § 523(a)(2)(A), Kapitus relies on its claim under 11 U.S.C. § 523(a)(2)(B) set forth
below.

was in the process of filing chapter 7 bankruptcies for all of his businesses, and he knew that the chapter 7 liquidation process would result in the immediate closure of all the businesses.[3]

c.  Debtor represented that the Merchant would not enter into any arrangement, agreement or commitment for any additional financing, whether in the form of a purchase and sale of receivables, the sale of accounts receivable, or a loan (whether secured or unsecured) with any party other than Kapitus without Kapitus's written consent; however, soon after entering into the Agreements, Merchant MossPrime Dental PLLC entered into a financing with Idea Financial. Considering the proximately of the timing, the Debtor likely had the intent to enter into the additional financing at the time he made the representation.[4]

d.  The Debtor represented that the Merchants were not party to any pending litigation that would have a material impact on the Merchants' businesses when, on information and belief, the Debtor and the Merchants were parties to pending litigation with the Department of Justice over violations of the Stark Act and this litigation did have a material impact on the Merchants' business.[5]

e.  The Debtor represented that the Debtor and Merchants were not in arrears on any business or personal loans or other financial obligations when, on information

---

[3]   If the statement regarding expecting to close its business for any reason in the next twelve months is a statement "respecting the debtor's or an insider's financial condition" as such term is used in 11 U.S.C. § 523(a)(2), then as an alternative to this claim under 11 U.S.C. § 523(a)(2)(A), Kapitus relies on its claim under 11 U.S.C. § 523(a)(2)(B) set forth below.

[4]   If the statement regarding obtaining additional financing is a statement "respecting the debtor's or an insider's financial condition" as such term is used in 11 U.S.C. § 523(a)(2), then as an alternative to this claim under 11 U.S.C. § 523(a)(2)(A), Kapitus relies on its claim under 11 U.S.C. § 523(a)(2)(B) set forth below.

[5]   If the statement regarding pending litigation is a statement "respecting the debtor's or an insider's financial condition" as such term is used in 11 U.S.C. § 523(a)(2), then as an alternative to this claim under 11 U.S.C. § 523(a)(2)(A), Kapitus relies on its claim under 11 U.S.C. § 523(a)(2)(B) set forth below.

and belief, the Debtor and the Merchants were in arrears on business or personal

loans. [6]

f.   The Debtor represented that the proceeds from the Agreements would be used in

the ordinary course of business when, on information and belief, the proceeds of

the Agreements were used for non-ordinary course business expenses including

wind-down expenses. [7]

50.   Based on the Debtor's representations, Kapitus funded the Merchants $350,000.00.

The Merchants made payments to Kapitus pursuant to the Agreements until they filed for

bankruptcy in July 2023.   Kapitus relied on these misrepresentations to extend the funding and

execute the Agreements.

51.   The Debtor's statements and acts constitute conduct to obtain money by false

pretenses, false statements, or actual fraud.

52.   The Debtor's debt to Plaintiff is a debt for money, property, services, or an

extension, renewal, or refinancing of credit, obtained by false pretenses, a false representation, or

actual fraud, and is non-dischargeable.  Plaintiff is entitled to an award of damages in the amount

of $414,102.00 through the Petition Date, plus any additional attorneys' fees, costs, interest, and

such other relief as the Court deems just and proper.

---

[6]   If the statement regarding not being in arrears on any loans or obligations is a statement "respecting the debtor's or an insider's financial condition" as such term is used in 11 U.S.C. § 523(a)(2), then as an alternative to this claim under 11 U.S.C. § 523(a)(2)(A), Kapitus relies on its claim under 11 U.S.C. § 523(a)(2)(B) set forth below.

[7]   If the statement regarding use of the proceeds of the Agreements is a statement "respecting the debtor's or an insider's financial condition" as such term is used in 11 U.S.C. § 523(a)(2), then as an alternative to this claim under 11 U.S.C. § 523(a)(2)(A), Kapitus relies on its claim under 11 U.S.C. § 523(a)(2)(B) set forth below.

## COUNT II
### Non-dischargeability of Debtor Pursuant to 11 U.S.C. § 523(a)(2)(B)

53.     Plaintiff repeats and realleges paragraphs 1 through 52 and incorporates the same as though set forth herein.

54.     Pursuant to 11 U.S.C. § 523(a)(2)(B), a debt in which a debtor obtains money by a statement in writing that is materially false respecting an insider's financial condition, on which the creditor reasonably relied, and which the debtor caused to be published with intent to deceive is non-dischargeable.

55.     Debtor and Merchants, insiders of the Debtor, did obtain money from Kapitus by statements in writing – the Acknowledgments and Representations and the Agreements – by making materially false statements with respect to the Debtor's and the Merchants' financial condition on which Plaintiff reasonably relied, among others:

     a.   The Debtor represented to Kapitus in writing that all information that he provided to Kapitus to obtain financing for his businesses accurately reflected the current financial condition of the business and there were no material changes from the financial information submitted on behalf of the Merchants; however, on information and belief, these representations were false when made.  The financial submissions made by the Debtor reflected that the Merchants were healthy businesses that generated substantial revenues with hundreds of thousands of dollars going through the business bank accounts, as reflected in the bank account statements provided to Kapitus, when just a few short months after applying for the financing with Kapitus the Debtor and the Merchants filed for bankruptcy.  Further, the October 2021 submission for Maxim Mossman DDS showed the company having $2.4 million in sales in 2021 and the 2021 tax return

for Maxim Mossman DDS showed $1,547,928 in income; however, the Schedules filed for Maxim Mossman DDS reflect that it did not generate any revenues from 2021-2023.

b.   Debtor represented to Kapitus in writing as late as May 9, 2023 that neither he nor his businesses intended to file for bankruptcy when, on information and belief, the Debtor was in the process of preparing to file for bankruptcy for himself and his businesses.

c.   Debtor represented to Kapitus in writing that he did not intend to close his businesses down for any reason in the next 12 months when, on information and belief, the Debtor was in the process of filing chapter 7 bankruptcies for all of his businesses and he knew that the chapter 7 liquidation process would result in the immediate closure of all the businesses.[8]

d.   Debtor represented to Kapitus in writing that the Merchants would not enter into any arrangement, agreement or commitment for any additional financing, whether in the form of a purchase and sale of receivables, the sale of accounts receivable, or a loan (whether secured or unsecured) with any party other than Kapitus without Kapitus's written consent when, on information and belief, Merchant intended to enter into additional financings as shown by Merchant entering into a financing with Idea Financial soon after the Debtor entered into the Agreements.

---

[8]   If the statement regarding expecting to close its business for any reason in the next twelve months is a statement "respecting the debtor's or an insider's financial condition" as such term is used in 11 U.S.C. § 523(a)(2), then as an alternative to this claim under 11 U.S.C. § 523(a)(2)(A), Kapitus relies on its claim under 11 U.S.C. § 523(a)(2)(B) set forth below.

e.  The Debtor represented to Kapitus in writing that the Merchants were not party to any pending litigation that would have a material impact on the Merchants' businesses when, on information and belief, the Debtor and the Merchants were parties to pending litigation with the Department of Justice over violations of the Stark Act and this litigation did have a material impact on the Merchants' business.

f.  The Debtor represented to Kapitus in writing that the Debtor and Merchants were not in arrears on any business or personal loans or other financial obligations when, on information and belief, the Debtor and the Merchants were in arrears on business or personal loans.

g.  The Debtor represented to Kapitus in writing that the proceeds from the Agreements would be used in the ordinary course of business when, on information and belief, the proceeds of the Agreements were used for non-ordinary course business expenses including wind-down expenses.

56.  The Debtor's conduct described above constitutes obtaining money by materially false written statement regarding an insider's financial condition, on which Plaintiff relied, and which the Debtor published with the intent to deceive.

57.  Consequently, the Debtor's debt to Plaintiff is one for money obtained by materially false written statement regarding an insider's financial condition, on which Plaintiff relied, and which the Debtor made with intent to deceive, and is non-dischargeable.

58.  As a result of Debtor's statements and acts described above, Debtor is not entitled to a discharge pursuant to Section 523(a)(2) of the Bankruptcy Code.  Accordingly, Debtor's debt to Plaintiff is non-dischargeable, and Plaintiff is entitled to an award of damages in the amount of

$414,102.00 through the Petition Date, plus any additional attorneys' fees, costs, interest, and such other relief as the Court deems just and proper.

## COUNT III
### (Non-dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(4))

59.      Plaintiff repeats and realleges paragraphs 1 through 58 and incorporates the same as though set forth herein.

60.      Debtor's liability to Kapitus, as alleged herein, is a debt for embezzlement within the meaning of section 523(a)(4) of the Bankruptcy Code.

61.      The obligations of the Debtor and the Merchants under the Agreements were secured by blanket liens on all the Merchants' personal property.

62.      On information and belief, the Debtor caused the Merchants to convey this same collateral to one or more different parties including Idea Financial.

63.      On information and belief, the Debtor caused the Merchants to sell the future Receipts that it had already purchased to one or more different parties including Idea Financial.

64.      Kapitus entrusted the Debtor to preserve the collate and its purchased Receipts for Kapitus' benefit.

65.      Kapitus did not receive any value in connection with the Debtor causing the Merchant's to pledge their personal property to another party or sell their purchased Receipts to another party.

66.      Such act constitutes embezzlement.

67.      Kapitus sustained damages as a result of the Debtor's embezzlement.

68.      Debtor's debt to Kapitus is a debt for embezzlement. Kapitus is entitled to an Order from this Court declaring that, pursuant to 11 U.S.C. § 523(a)(4), Debtor's debt to Kapitus is non-

dischargeable and a judgment for money damages pursuant to the request herein.  Kapitus is also entitled to its attorneys' fees and costs of suit incurred in prosecuting this Complaint.

<u>**COUNT IV**</u>
**(Non-dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(6))**

69.     Kapitus repeats and realleges paragraphs 1 through 68 and incorporates the same as though set forth herein.

70.     Pursuant to § 523(a)(6), a debt incurred by a debtor who engages in willful malicious conduct which results in damage shall be nondischargeable.

71.     Kapitus believes and alleges that Debtor entered into the Agreement with the intent to use Kapitus' payment for uses other than those represented to Kapitus including for payment of wind-down expenses, knowing that the financial and business information that he provided to Kapitus did not represent Debtor's true condition and operations.

72.     Upon information and belief, Debtor also engaged in the following willful and malicious acts, among others:

a.   Willfully and maliciously executed the Agreement in which he falsely and fraudulently represented that the Merchants' financial condition was accurately reflected in the documents produced to Kapitus and he failed to disclose any material changes in the Merchants' expected business and financial condition.

b.   Willfully and maliciously entering into subsequent contracts conveying, selling and/or encumbering Kapitus' purchased Receipts and Kapitus' collateral.

c.   The Debtor receive money from Kapitus based on Debtor's false and fraudulent statements and acts.

73.     Debtor's activities described herein constitute willful and malicious conduct which resulted in damage to Kapitus, and Debtor's debt to Kapitus is nondischargeable.

74.     As a result of Debtor's statements and acts described above, Kapitus is entitled to an Order from this Court declaring that, pursuant to 11 U.S.C. § 523(a)(6), Debtor's debt to Kapitus is non-dischargeable and a judgment for money damages pursuant to the request herein.  Kapitus is also entitled to its attorneys' fees and costs of suit incurred in prosecuting this Complaint.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for entry of judgment against the Debtor, as follows:

a.     for an award of damages in the amount of $414,102.00 plus attorneys' fees, costs and interest accruing on and after the Petition Date; and

b.     for an order providing that the debt owed by Debtor to Plaintiff is non-dischargeable in the instant bankruptcy case, in any other chapter under title 11 to which this case may be converted, and in any future bankruptcy case filed by or against the Debtor;

c.     for such other and further relief as this Court may deem just and proper.

Dated: December 22, 2023

**PARKINS & RUBIO LLP**

*/s/ Charles M. Rubio*
Charles M. Rubio
TX Bar No. 24083768
Pennzoil Place
700 Milam Street, Suite 1300
Houston, TX 77002
Phone: (713) 715-1660
Fax:    (713) 715-1669
Email: crubio@parkinsrubio.com

COUNSEL FOR PLAINTIFF
KAPITUS SERVICING, INC.